The Honorable, the Judges of the United States Court of Appeals for the Eighth Circuit. Hear ye, hear ye, hear ye, the United States Court of Appeals for the Eighth Circuit is now in session. All persons having business before this Honorable Court may now draw near and they will be heard. God save the United States and this Honorable Court. All right, good morning. Please call the first case for argument. Case number 21-1624, Heidy Menjivar v. Merrick B. Garland. Very well, Mr. Wilmoth, we'll hear from you first. Thank you, Your Honor. Good morning. May it please the Court, Jonathan Wilmoth on behalf of the petitioner, Heidy Rivera Menjivar, who came to this country seeking protection from the gangs who she fears will harm or kill her if she returns to her native El Salvador due to her activities as a leader in her Assemblies of God church group. Specifically, it was a group that targeted gang membership. They reached out to youths to try to keep them from joining the gangs or to actively recruit them to leave the gang, which she did. There was a gang member who she actively recruited and turned away from the gang and he had to move into a shelter to seek protection once she had done so. The evidence submitted in this case showed that people like Heidi were specifically targeted by gangs and the immigration judge in this case, unfortunately, did not receive the evidence that we had submitted prior to trial. The immigration court practice manual currently has a rule that says all evidence needs to be submitted 30 days in advance. Back then, and when this trial happened in 2019, that was 15 days. So, our evidence was due on January 20th of 2019. We filed it on the 17th and had a stamped copy showing that it had been properly filed, but due to some error with the court, he did not receive it prior to the trial. During the hearing, he asked, hey, where's your evidence? We gave him a copy of it. We gave him our packet. The clerks made a copy of it so that he had it by the close of evidence, some 300 pages of materials that we had submitted. We believe that the court not taking sufficient time to review the evidence was a violation of the petitioner's due process rights. Counsel, this is Judge Kobus. How long should the judge have reviewed the materials in order to satisfy due process? Enough time to actually read them, for one. No, but specifically, you're arguing that this was a specifically insufficient amount of time. How much time does an IJ need to spend on per page of the record? That seems to me to be a tough argument to make. If we were coming to this court saying, this judge has to spend two minutes per page, then yes, that would be a problem, but that's not our argument. We're not saying that it had to be exactly 46 and a half minutes as opposed to 45. What we're saying is the court has to take sufficient time to actually review the evidence. There's no way that a judge or a petitioner could be wrong. The reason why we're saying this is that he got things wrong. He didn't bring up the fact that the evidence itself showed that the petitioner was not similarly situated to her family, and yet, throughout his decision, he referred to the fact that they were similarly situated. Specifically, he mentioned the petitioner's sister and said that her sister was also in this church group. What the evidence actually said was that the petitioner here wasn't just a member like her sister had been, but was a leader. She was described by the pastor as being someone who was very active in the church, very active in the specific group, and was, in fact, a leader of that youth group that her sister had been involved in. Those kinds of distinctions are something that the court might get if it spent more time actually reviewing the materials that have been submitted instead of the just short amount of time that he spent. In order to show due process violation, we have to show both the fundamental procedural error and prejudice. Here, the fundamental procedural error that we're arguing is that the court did not follow the regulations which require it to receive and consider the evidence submitted. This court in Cardozo-Salazar found that a violation of a specific regulation allowing someone in removal proceedings to review the evidence against them was a fundamental procedural error. Here, this violation is also of a similar regulation. We believe that the fundamental procedural error is the violation of that regulation. The prejudice is shown in the decision of the Board of Immigration Appeals and the immigration judge's decision that it was reviewing, where they specifically mentioned the topic we just discussed, which was whether her family was similarly situated. Also, the court was focusing on how all of the evidence was about general violence. Really, the evidence that we submitted was specific to religious cases similar to the petitioners, where the gangs targeted people who were leaving their gang for religious reasons, continued to follow up with them over years to show that it was a genuine departure for religious reasons and not one done just for show or to get out of the group. The gangs controlling whole their religious beliefs in that way. Another issue in this regard is the issue of past harm versus future harm. In this case, the Board of Immigration Appeals, in reviewing the immigration judge, looked at the fact that the petitioner herself wasn't physically harmed in the past. One of the arguments that we made both to the judge and to the Board of Immigration Appeals was that there's a distinction between showing past harm and having a well-founded fear of future harm. This is really blurred by the judge, in particular, when over and over and discussing the various issues of this case, says, well, she wasn't specifically harmed in the past. But if a requirement to have a well-founded fear of future persecution is that you're harmed in the past, then there's no distinction between the two any longer. The Supreme Court and Cardoso-Fonseca, the Act itself, all talk about that distinction. The Immigration Nationality Act says that it is a well-founded fear for future persecution. But if, as the judge did here, he's constantly only looking at whether or not there was harm in the past, then it's really blurring that line, and now there's no distinction between the two any longer. The evidence we submitted goes to whether or not the petitioner in this case has at least a 10% chance of being harmed in the future if she were to be returned. And that's as a woman and as an active religious person who had turned a gang member away from the gang and was actively involved in those religious activities that the gang sought to overcome. Also, may I just clarify, are you raising a substantial evidence challenge to the decision in addition to your due process claim, or is what you discuss here all about prejudice under a due process claim? I believe it goes to both. We would argue that... You're raising both. Yes, sir. What is the evidence that you think would compel a reasonable adjudicator to say that she does have a well-founded fear? You've explained why you think the absence of the potential for future persecution, but what specifically supports, not supports, as I understand the law, compels the conclusion that she would have a well-founded fear? The evidence that was submitted shows that the gangs specifically target people who are involved in these same kind of activities. Does that mean anybody who's the leader of a youth group in El Salvador? Who's actively recruiting... I'm sorry, Your Honor. That's why I was getting it. Your similar groups or similar leadership positions, are you saying then that anyone who leads a church youth group has a well-founded fear of persecution? Is it that broad? Is there something more particular to your client? It's more particular to our client because her religious activities were specific, so you could have a youth group that wasn't involved in the same kind of outreach to gang members to try and turn them away from the gang. But here, her specific religious activities were going out into the community and actively trying to turn gang members away from the gang to lead a religious life like she had. And so it's that tie. So the gangs are opposed to the religious activities of people who are taking away their members. So her religious activity was sort of an affront to their power, their authority. And what's the evidence that would compel the conclusion that the acts of the gang should be attributed to the government? So the government itself, there's two separate issues. One is in terms of the Convention Against Torture, whether or not they're willfully blind. And the other is whether they sort of are unable or unwilling to control. These are both related issues. And this court in Gatungu talked about how when a government spends, you know, a decade or so saying, we're going to stop this, we're going to fight this, making some arrests here and there, that in general is ineffective against that group, that they can't be said to be able or willing to control them. And here, we would argue that same analysis applies where you have a gang or a government that is suffering from widespread corruption, gangs act with impunity, and this has been going on for decades. And so by the mere fact that a gang member here or there may be arrested, or there may be some new proposal that doesn't work just like all the ones before it didn't work for 20 or 30 years, that that's evidence similar to this court's finding in Gatungu that they're unable or unwilling. Or in the case of the Convention Against Torture argument, that they are essentially willfully blind because of their own corruption and their failures to control or effectively combat the gang. All right. Thank you for that answer. Would you like to save any time for rebuttal? Yes, your honor. Thank you. You have two minutes left. You're not required to stop. I just wanted to make sure you knew you were into that time. I do and I appreciate it. I would like to stop at this time. All right. Very well. Thank you for your argument. Thank you. Ms. Lee, we'll hear from you. Good morning, your honors. May it please the court, Jenny Lee on behalf of the respondent, the Attorney General of the United States. The court should deny this petition for review because petitioner cannot establish a due process violation and she cannot establish that the record compels the conclusion that she was eligible for asylum withholding of removal and cap protection. Turning to the first issue, in order to establish a due process violation, petitioner must establish a fundamental procedural error and prejudice. Here she can do neither. It was, there was no error in this case because it was not improper for the immigration judge to look at her 300 plus page submission in 45 minutes where the immigration judge looked at the documents after petitioner's testimony and closing arguments. So the immigration judge knew exactly what documents to focus on. The background documents in this case were not unique. In fact, the immigration judge stated at record, administrative record 180, that he had seen some of these documents before because petitioner's counsel had submitted some of the same documents in a previous case. And then finally, if you were to look at the 300 plus page submission, you will see that only six translated pages are directly related to petitioner. So given these, given these facts, it was not improper for the immigration judge to look at this documentation in 45 minutes. But assuming that it was an error, there's no prejudice. Nothing in petitioner's submission might well have changed the outcome of her case. Specifically, the immigration judge noted petitioner's sister's affidavit stating that some people in their church youth group had problems by gang members, but the sister did not indicate that petitioner ever had similar problems as noted by the immigration judge at submitted an affidavit stating that the church youth group received threats and acts of violence by gang members. But again, there was nothing in the record that showed that the petitioner was personally threatened or physically harmed. So the immigration judge did make specific findings about the documentation that petitioner submitted that were particular to her. The immigration judge found that it was particularly persuasive that her parents and sister, who was a member of the youth group, was active and remained in El Salvador and was not troubled by the gangs there. And finally, let's look at her testimony. She said that her pastor never received a letter specifically about her and she was never harmed or threatened. Given the evidence, there is no prejudice. There's nothing in the 300-page submission that might well have changed the outcome of her case. Moving to the issue of whether petitioner established a well-founded fear. In order for her to do that, she must present objectively reasonable evidence that she herself will be targeted, but she can't do that based on this evidence. Her best evidence is that the pastor indicated that there were threats and acts of violence against our youth group leaders and members, but the pastor did not make an elaboration on what these threats or acts of violence were. We have no evidence whether the threats or acts of violence even reached the level of persecution and whether it would be specifically targeted to her. And again, we know based on her testimony that these threats were never specifically directed at her. Her sister also indicated that some people in the church youth group experienced problems with these things. But again, the sister did not indicate that petitioner had similar problems. The immigration judge found that her family was similarly situated, specifically her sister, who was a member of the church group and female. If petitioner is now claiming that the sister is different because a sister was not a leader and the sister did not speak to a gang member, we don't know that because there's an absence of evidence. And if there's an absence of evidence, it's petitioner's burden to establish that she is eligible for this relief. So in this case, what happened to the family who is similar situated, it directly informs what would happen to her future fear. Petitioner's claim based on her fear based on her gender is based on what she read in the news, which is her testimony at Administrative Record 192. Like this petitioner in Fuentes V. Barr 969 F. 3rd 865, this court in 2020 found that the petitioner who argued that she had a well-founded fear based on her testimony that she was afraid of gangs and violence plagues El Salvador, and that she cited to documentary evidence that women were not protected. But this court found in 2020 that her fear that the petitioner show a fear of particularized persecution to herself or her group, which she could not do in Fuentes. Similarly, this petition cannot do in this case. Again, there is no particular sphere of future persecution to the petitioner that she showed in her evidence. Regarding petitioner's argument that past persecution cannot be used, well, whether she was persecuted in the past, that would directly inform whether she has future persecution. But it's not just looking at the past persecution, because the immigration judge went into depth as to whether her future fear was, whether she established future fear. And given this record, nothing compels a contrary conclusion to that reached by the agency. And given that she cannot show a well-founded fear for asylum, she cannot show the clear likelihood of future persecution, which is required for withholding of removal. Finally, moving on to the third and final issue of cat acquiescence. Before you go to the convention, could you address this question, whether the government is unwilling or unable to control the gangs, if we assume for the sake of analysis that there's a well-founded fear that gangs will persecute youth group leaders? So was that part of the board's decision, or did they strictly rely on insufficient evidence of a well-founded fear? That is correct, Judge Colton. The board relied on the sufficiency of the evidence, and they did not talk about unable and unwilling. Okay, all right, then we couldn't affirm on that basis in any event, so unless you want to argue differently, it sounds like that's not an issue before us. That is not an issue before this court. Yeah, okay, then go ahead to your convention argument if you'd like. Thank you. To qualify for cat relief, petitioner must show that the torture would be inflicted by or at the instigation of or with the consent or acquiescence of a public official. An acquiescence requires that the public official be aware of the activity and thereafter reach his or her legal responsibility to prevent such activity. Here, the evidence shows that public officials in El Salvador are actually fighting gang violence, and if you look at the record at Administrative 560-1996, which is the DHS submission, which shows that public officials are actually doing stuff about gang violence. In addition, petitioner submission, for example, at Administrative Record 262 indicates that the armed forces and the police are actually firing members of their forces that are known to be gang or affiliated with gangs. So based on the evidence that we have, we know that public officials are doing something to fight the gangs. Indeed, this court has found that public officials in El Salvador do not acquiesce to torture. In Aguinaldo-Lopez v. Lynch, in 2016, this court stated, certainly El Salvador has struggled to protect against gang violence, but it has not acquiesced to gang violence. And then it cited to Solis v. Bukesi, which is a 2008 case in which the court found the same. And then in 2018, in the case of Rivas v. Sessions, the court cited the Aguinaldo Court saying, certainly El Salvador has struggled to protect against gang violence, but it has not acquiesced to gang violence. So even this court has found that the Salvador government has not, public officials in the Salvador government, have not acquiesced to torture of its citizens. And with regard to petitioner's citation to a case about the Munguqui and the Kenyan government, that is not applicable to El Salvador, where this court has made specific findings about acquiescence. Counsel, of what relevance would the older cases be to that issue? I'm sorry, Judge Gretz, you mean the Munguqui case? I was just wondering what the relevance might be of some of those older cases, given that the circumstances could certainly change. Certainly, Your Honor, circumstances could change, but the court recently, as in 2018, found that the Salvadoran government does not acquiesce, the public, sorry, public officials of the Salvadoran government do not acquiesce to torture. And there's nothing in the documentation in this record that would compel a contrary conclusion. If the court has no further questions, respondent rests on his brief, and thanks the court for the time and allowing us to appear remotely. Yes, I do have one more question on the issue of future persecution. Is there evidence that the gangs do take action against youth group leaders or people in the category that the petitioner says she falls? So, the only evidence in the submission that petitioners counsel submitted, the only thing that directly relates to what you are asking, are the affidavits from the sister and pastor. The other information are all background information as to what happens when a gang member leaves the gang and enters a church. And there's nothing to talk about the youth groups. So, in this case, there's really an absence of evidence, and really, if there is an absence of evidence, that would fall on petitioner. So, but the pastor says that there were threats and acts of violence against some people in his church. Yes, your honor. Right, and your view on that is that it's not strong enough because it's not clear whether those threats and acts of violence rise to the level of persecution. Was that your point? So, my point is the pastor's letter, one, does not indicate that the threats and acts would rise to the level of persecution, and two, it did not indicate how big the group is and whether those acts or threats would really be directly affecting, would be particular to petitioner. Let's say the youth group is about 100 people. If there's a threat to them, and petitioner's sister and petitioner say, well, I've never directly been threatened. Well, based on that evidence, we can't say that she has a particular risk. And again, this is petitioner's burden, and if she doesn't provide that evidence, then it falls on her. All right, thank you for your argument. Thank you, your honors. Mr. Wilmoth, we'll hear from you in rebuttal. Thank you, your honor. So, initially, there was some mention about the evidence that was submitted, and the immigration judge, page 180, really early on, when he first had received the package, said, oh, I recognize some of these articles, which is not the same thing as saying that at the close of testimony, he didn't have to go back and look at them for the specific things that were argued here in this case. Not every article is presented in every case for the same purpose. The government said, well, there were only six articles. The only way to know that is to actually review it, and so that wouldn't have been something the judge would know at the time that he's closing to review it. Again, the government's argument with respect to the future fear here today is essentially the same. The immigration judge, in discussing future fear, went back again and again to whether or not the petitioner had suffered past harm, and so our argument is that both in argument today and in the briefs and at the board, essentially, the argument is, well, if you haven't suffered past persecution, you can't show a well-founded fear of future persecution. Finally, in the last few seconds here, the issue of willful blindness that we mentioned, this is something that was not addressed by the immigration judge. There's no finding of fact on it, and so we argued to the Board of Immigration Appeals in our briefing that it has to be remanded because the board itself can't engage in fact-finding, so this is an issue we raise specifically to the board and that we ask this court to consider as well. On which issue is that? Willful blindness, so whether or not the government of El Salvador is willfully blind on the Convention Against Torture. Yes, Your Honor. And my time's over, so thank you all very much. Very well. Thank you to both counsel. The case is submitted. The court will file a decision in due course. Thank you.